# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ROSEMARY RAINEY,
     *Plaintiff*,

     v.

CAROLYN W. COLVIN,
*Commissioner, Social Security*
*Administration*,
     *Defendant*.

No. 16-cv-646 (VAB)

## RULING AND ORDER ON MOTION TO AFFIRM AND MOTION TO REVERSE THE DECISION OF THE ACTING COMMISSIONER

Rosemary Rainey ("Plaintiff") filed this administrative appeal under 42 U.S.C. § 405(g) against Carolyn W. Colvin, the Acting Commissioner of Social Security[1] ("Defendant" or "the Acting Commissioner"), seeking to reverse the decision of the Social Security Administration ("SSA") denying her claim for Title II disability insurance benefits under the Social Security Act. Complaint, dated May 2, 2016 ("Compl."), ECF No. 1, at 1.

Accordingly, Ms. Rainey moves for an order reversing the decision of the Acting Commissioner. Motion to Reverse the Decision of the Commissioner, dated Nov. 23, 2016 ("Mot. to Reverse"), ECF No. 18. The Acting Commissioner moves for an order affirming her decision. Motion to Affirm the Decision of the Commissioner, dated Aug. 29, 2017 ("Mot. to Affirm"), ECF No. 25.

---

[1] While Ms. Colvin was named in the original Complaint and case caption as the Commissioner of the Social Security Administration, she never served in this position. She was nominated to the position of Commissioner in June 2014, but was never confirmed by the United States Senate; instead, her nomination was returned to the President. *See* 160 CONG. REC. S6930–32 (2014). Colvin was not subsequently renominated. She continued to serve as Acting Commissioner until resigning in January 2017. *See, e.g.*, Carolyn Colvin, *Generosity Begins at Home*, SOCIAL SECURITY MATTERS (Dec. 22, 2016) (SSA blog post at end of Colvin's tenure identifying her as Acting Commissioner).

For the following reasons, the motion to reverse the decision of the Acting Commissioner is **DENIED** and the motion to affirm the decision of the Acting Commissioner is **GRANTED**.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Ms. Rainey, a fifty-five year old Connecticut resident, lives alone on the second floor of a two-story building. She alleges having been disabled since 2008 and now seeks review of denial of Title XVI benefits. All factual allegations are uncontested.

A.     **Medical Evidence**

Ms. Rainey's medical history includes degenerative disc disease of the lumbar spine, depression, a bilateral knee impairment, HIV/AIDS, hepatitis C, chronic obstructive pulmonary diseases ("COPD"), heart disease, obesity, post-traumatic stress disorder ("PTSD"), and shoulder pain. *See, e.g.*, Transcript of Administrative Record, filed Aug. 9, 2016 ("Tr."), annexed as Exs. 1–17 of Defendant's Answer, ECF Nos. 12-1–12-17, at 483–84, 477, 674–675, 779, 534, 585, 790, 826, 390, 400, 609–210, 391, 401, 389.

Ms. Rainey has, on multiple occasion, been treated after complaining of "chronic pain" in her left knee. *Id.* at 483, 477–8, 674. In October 2011, Ms. Rainey was treated for left knee pain and lower back pain. Her principle complaint was "chronic pain*." Id*. at 483. An examination revealed lower back pain and muscle spasm, for which she was prescribed Tramadol, Diclofenac, and discontinued use of Naproxen because it was deemed ineffective. *Id*. at 484. In November 2011, she was again seen for left knee pain and diagnosed with patellar chondrolmalacia of the left knee. *Id*. at 477–78. In April and May 2013, Ms. Rainey complained of pain in her knees and back that registered as an eight out of ten. *Id*. at 481–82, 675–76.

Medical records as early as November 2010 reflect that Ms. Rainey has a history of left knee pain, and walks with a limp. *Id*. at 389–90 ("[Had injury left knee years ago and now has

progressive pain and joint click."). A January 2011 x-ray of Ms. Rainey's knee showed "minimal degenerative change," and an MRI performed in February 2011 revealed: "MCL bursitis, medial suprapatellar plica, chondromalacia in the median ridge of the patella, degenerative type thinking of the medial meniscus and tiny popliteal hernia." *Id.*

In October 2011, Ms. Rainey was referred to a physiatrist and prescribed a knee brace. *Id.* at 484, 839.

Ms. Rainey was diagnosed as HIV positive in 2010; as of April 2016, Ms. Rainey was asymptomatic with an undetectable viral load. *Id.* at 600. She has been diagnosed as having AIDS, and placed on atovaquone as a prophylaxis against Pheumocystis jerovencii. *Id.* at 534, 540, 585, 591, 661–62, 674, 680, 830.

At least twice, Ms. Rainey has had to discontinue treatment because of complications due to treatment. *Id.* at 604–06, 790. From September 2012 to June 2013, Ms. Rainey was treated with Pegasys, Interferon, and Ribavirin, but the treatment had to be stopped due to detectable viremia. *Id.* at 790. While awaiting a new treatment, almost a year later, her viral load was more than 800,000. *Id.* at 826. During a second course of treatment, Ms. Rainey developed generalized pruritus. *Id.* at 682. According to a physician who treated Ms. Rainey, Pegasys can carry side effects of anemia, low energy, and fatigue. *Id.* at 601. She was hospitalized in December 2012 due to a number of symptoms and the medical record states: "the patient's ribavirin and Pegasys were placed on hold during this admission as she did have acute kidney injury and diarrhea, initially." *Id.* at 605.

Ms. Rainey was hospitalized due to issues related to COPD and other bronchial issues. *Id.* at 602. In addition to COPD, she also suffers from asthma and chronic bronchitis. *Id.* at 390, 403, 475, 609. On at least one occasion, in 2010, Ms. Rainey was referred to specialists for

consultations regarding asthma and COPD. *Id*. at 391. In the beginning of 2013, she was hospitalized from December 29, 2012, and discharged on January 4, 2013. *Id*. at 602. While hospitalized, Ms. Rainey experienced a number of pulmonary traumas, which, in combination with other ailments, lead to her transfer to the intensive care unit. *Id*. at 602, 609.

Ms. Rainey has suffered two heart attacks and, despite taking a long list of prescriptions, continues to experience hypertension. *Id*. at 609, 313, 347–78, 357–58, 366, 836, 496, 498–500, 502.

Ms. Rainey has been diagnosed as obese. *Id*. at 391, 401. As early as 2010, she has been reported as having a BMI of at least 30. *Id*. at 149, 433, 438, 448, 456, 462, 466, 827, 832, 843. She has also been referred for nutrition therapy and intervention and met with a nutritionist. *Id*. at 467, 486, 528.

And she has complained of should pain and examination has shown signs of degeneration. *Id*. at 390, 431, 713. On a number occasions, she visited doctors due specifically due to reported back and knee pain, *id*. at 492, 510, and, at other times, she complained of pain while seeking treatment for other medical issues, *id*. at 444, 456, 543.

B.       **Procedural Background**

On September 27, 2012, Ms. Rainey applied for Title XVI benefits, alleging being disabled since January 1, 2008. Compl. ¶ 4. The application for benefits was first denied on December 18, 2012, and denied for a second time on May 3, 2013. *Id.* ¶ 5.

On December 17, 2014, the SSA held a hearing; Ms. Rainey appeared, represented by counsel, before Administrative Law Judge ("ALJ") Sharda Singh, as did Steven B. Sachs, Ph.D., an impartial vocational expert. Tr. at 20.

Ms. Rainey testified that she is fifty-five years of age, divorced, and lives alone on the second story of an apartment building with an elevator. *Id*. at 81. She receives cash assistance from State Administered General Assistance ("SAGA"), which is a state-based disability benefit program administered by the Connecticut Department of Social Services (DSS). *Id*. at 82.

Ms. Rainey testified that she worked full-time for eleven months in 1999 as a crew member at McDonalds. *Id*. at 84. Her duties would require that she stand, walk, and serve customers; she received a thirty minute break, which allowed for her to sit. *Id*. at 84. The work occasionally required that she lift twenty-to-thirty pounds. *Id.* Lifting items of any significant weight with more frequency was difficult for Ms. Rainey, because, as she described it: "the weight goes through my arms down to my back and knees." *Id*. at 85. She further testified that there is no amount of weight at present that she could carry with any frequency for five hours in an eight hour day. *Id*. at 90.

Dr. Mauricio Montezuma treats Ms. Rainey for the pain she experiences in her lower back. *Id*. at 85. Ms. Rainey described the pain as constant, with an intermittent muscle spasm "which can be sometimes excruciating," radiating down to her knees and causing them to burn. *Id*. at 86. The pain varies between five and "over a 10" on a ten point scale, with ten indicating the highest scaled pain level. *Id*. at 86. She would use Cyclobenzaprine to help manage the pain but testified that it did not help to alleviate the pain. *Id*. at 87. Walking up to thirty minutes is sufficient to cause Ms. Rainey "excruciating" pain. *Id*. at 88. Ms. Rainey uses the assistance of a cane when walking or standing up from a sitting position, both inside and outside of her home. *Id.* Similarly, she stated that, if she stands in one spot for more than fifteen to twenty minutes, her legs begin to throb, causing Ms. Rainey to feel as though she may fall. *Id*. at 89. She

experiences pain in her knees, which she described as registering as eight on the ten point scale; they "throb with pain" consistently. *Id*. at 90.

Ms. Rainey testified that, to the best of her ability, she does household chores. *Id*. at 94. She vacuums, does her laundry, and cooks meals, though she does so while sitting down to avoid aggravating her back and knees. *Id.* She does not receive assistance in completing these chores. When doing laundry, she uses a "shopping cart" to transport her laundry to the laundry facilities, which are on the same floor as her apartment. *Id*. at 97. Ms. Rainey also does her own shopping, although there are times, for example, when she does bulk grocery shopping, in which she receives assistance from Peter's Retreat, an organization that provides assistance to individuals living with HIV/AIDS. *Id*. at 94. She cleans the bathroom while on her hands and knees, to avoid standing. *Id*. at 98. Although she is able to dress herself, she cannot stand while putting on her pants. *Id.*

She is able to navigate a grocery store with the aid of a cane; she also uses the shopping cart for support. *Id*. at 94–95. She also uses public transportation, but there are times when the pain in her lower back and knees is so substantial that, approximately two-to-three times monthly, she will call Peter's Retreat for transportation services. *Id*. at 95. Ms. Rainey sometimes also attends church.

Ms. Rainey testified that she has been diagnosed with depression and post-traumatic stress disorder ("PTSD"). *Id*. at 91. She described experiencing melancholia, during which she does not want to speak to others, gets lost in her thoughts, and avoids social situations. *Id.* Because of these feelings, as often as four times weekly, she will put a sign on her apartment door asking not to be disturbed. *Id*. at 92. Once monthly, she meets with Dr. Matthew Dickinson

for talk therapy, where she discusses with him how she is feeling and the medication he has prescribed to her. *Id*. at 92–93.

Ms. Rainey testified that she has been diagnosed with HIV. *Id*. at 100. With medication, her viral load remains undetectable. *Id*.

Steven Saxx also testified as a vocational expert. *Id*. at 101. He testified that Ms. Rainey's employment with McDonald's was as a fast food worker, unskilled, and involved light exertional work. *Id*. at 102. He stated that an individual of the same age, with the same education, and past work experience could lift or carry twenty pounds occasionally or ten pounds frequently; stand and walk six hours and sit for up to six hours during an eight hour day; never climb ladders, ropes, or scaffolds, but occasionally climb stairs, ramps, or balance, stoop, kneel, crouch, and crawl; and must be limited to understanding, remembering, and carrying out simple routine, repetitive, non-complex tasks could perform the tasks of a fast food worker. *Id*. at 104.

Assuming the same limitations, but also assuming that such an individual would need to miss work for two days monthly, he stated that the individual could not perform the tasks of a fast food worker or any other job. *Id.* Finally, assuming the initial limitations and that the individual would also be "off task" for more than fifteen percent of a workday, he stated that the individual could not perform the tasks of a fast food worker or any other job. *Id*. at 104–05.

After the hearing, on January 18, 2015, the Administrative Law Judge ("ALJ") found that Ms. Rainey was not entitled to disability insurance benefits, based on the following findings:

1.  The claimant has not engaged in substantial gainful activity since September 27, 2012, the application date (20 C.F.R. 416.971 *et seq.*).

2.  The claimant has the following severe impairments: degenerative disc disease (DDD) of the lumbar spine and depression (20 C.F.R. 416.690(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(c), 416.925 and 416.926).

4.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She must avoid hazards. She is limited to understanding, remembering, and carrying out simple, routine, and repetitive noncomplex tasks.

5.   The claimant is capable of performing past relevant work as a Fast Food Worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 416.965).

6.   The claimant has not been under a disability, as defined in the Social Security Act, since September 27, 2012, the date the application was filed (20 C.F.R. 416.920(f)).

*Id*. at 22–29.

Upon the Appeals Council's March 3, 2016, denial of Ms. Rainey's timely request for review of the decision, the decision became final. Compl. ¶ 8.

Ms. Rainey filed a complaint in this Court on May 2, 2016 seeking review of the Acting Commissioner's decision. *See id.* ¶ 9 (noting that Ms. Rainey sued within sixty days of receipt of the Appeals Council decision); *see also* 42 U.S.C. § 405(g) (requiring that a civil action commence within sixty days after mailing of the notice of decision). On November 23, 2016, Ms. Rainey moved for an order reversing the decision. *See* Mot. to Reverse. On August 29, 2017, the Acting Commissioner moved to affirm the decision. *See* Mot. to Affirm.

The Court notes that Nancy A. Berryhill became the Acting Commissioner of the Social Security on January 23, 2017,[2] a fact which is reflected in the case caption of the Acting

---

[2] While there is arguably "some doubt about Berryhill's current legal status in light of the recent determination by the Government Accountability Office that her tenure has expired under the Federal Vacancies Reform Act," *Isureal v. Berryhill*, No. 15-cv-221 (JAM), 2018 WL 1409797, at *1 n.1 (D. Conn. Mar. 21, 2018) (citation omitted),

(Continued . . . )

Commissioner's August 29, 2017 motion to affirm. *See* Mot. to Affirm at 1. When a party in an official capacity resigns or otherwise ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party, regardless of the party's failure to so move or to amend the case caption; the Court may also order such substitution at any time. FED. R. CIV. P. 25(d); *see also Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018); *Tanvir v. Tanzin*, 894 F.3d 449, 459 n.7 (2d Cir. 2018).

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court reviewing a disability determination "must determine whether the Commissioner's conclusions 'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)); *see also Moreau v. Berryhill*, No. 17-cv-396 (JCH), 2018 WL 1316197, at *3 (D. Conn. Mar. 14, 2018) ("Under section 405(g) of title 42 of the United States Code, it not a function of the district court to review *de novo* the ALJ's decision as to whether the claimant was disabled . . . . Instead, the court may only set aside the ALJ's determination as to social security disability if the decision 'is based upon legal error or is not supported by substantial evidence.'") (internal citation omitted) (quoting *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998)).

The ALJ's decision is supported by substantial evidence if there "is 'more than a mere scintilla'" of evidence to support the conclusion. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). Substantial evidence "means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* at 447–48 (quoting *Moran*, 569 F.3d at 112). This standard of review

---

Berryhill remains the current officeholder at this time. *See* Acting Commissioner Bio, accessed Oct. 3, 2018, https://www.ssa.gov/agency/commissioner.html.

is "very deferential." *Id.* at 448 ("But it is still a very deferential standard of review—even more so than the 'clearly erroneous' standard.") (citing *Dickson v. Zurko*, 527 U.S. 150, 153 (1999)).

## III.     DISCUSSION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled under the Social Security Act, an ALJ must perform a five-step evaluation. *See* 20 C.F.R. § 416.920(a)(4)(i)–(v). First, the ALJ must consider whether the claimant is performing gainful work activity. *Id.* § 416.920(a)(4)(i). If the claimant is doing substantial gainful activity, the claimant is not disabled. *Id.*

Second, the ALJ must consider the medical severity of the impairment that limits his or her ability to do basic work activities. *Id.* § 416.920(a)(4)(ii). If the claimant does not have a severe medical impairment that meets the duration requirement, *i.e.* lasts at least twelve months or results in death, *see id.* § 416.909, or a combination of impairments that is severe and meets the duration requirement, the claimant is not disabled. *Id.* §§ 416.920(a)(4)(ii), 416.920(c).

Third, if the claimant does have a severe medical impairment, then the ALJ considers whether, based on the medical evidence, the claimant has an impairment that "meets or equals" an impairment listed in Appendix 1 of the regulations. *Id.* § 416.920(a)(4)(iii). If the claimant does have an impairment that meets or equals the impairments in that list, and the impairment meets the duration requirement, *i.e.*, lasts at least twelve months or results in death, *see id.* § 416.909, then the ALJ will find the claimant disabled without considering non-medical evidence, such as vocational experience, education, and work experience. *Id.* § 416.920(a)(4)(iii).

Fourth, the ALJ considers the claimant's "residual functional capacity and [ ] past relevant work." *Id.* § 416.920(a)(4)(iv). If the claimant is able to perform past relevant work, the claimant is not disabled. *Id.*

Finally, fifth, the ALJ considers the claimant's "residual functional capacity and [ ] age, education, and work experience" to evaluate whether the claimant "can make an adjustment to other work." *Id.* § 416.920(a)(4)(v). If the claimant is able to adjust to other work, then the ALJ will find the person not disabled; if the claimant cannot make the adjustment, the ALJ will find the person disabled. *Id.*

Here, the ALJ found that Ms. Rainey had not engaged in substantial gainful activity since the date of her application for benefits, September 27, 2012, and that her degenerative disc disease of the lumbar spine and depression were severe impairments. Tr. at 22. The ALJ next found, however, that Ms. Rainey "does not have an impairment or combination of impairments that meets or medically equals the severity" a listed impairment that would equal a disability. *Id.* at 23.

The ALJ noted that for a spinal condition to be severe enough to constitute a disability, there must be evidence of "(A) nerve root compression accompanied by the required physical findings, including motor sensory or reflex loss; (B) spinal arachoniditis; or (C) lumbar spinal stenosis resulting in pseudoclaudication." *Id.* at 24.

The ALJ further noted that a mental impairment, to amount to a disability, must result in at least two of the following:

> marked restriction of activates of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration,

means three episodes within 1 year, or an average of once every 4
months, each lasting for at least 2 weeks.

*Id.* Applying these standards to this case, the ALJ found that the medical evidence in the record

on Ms. Rainey's spinal condition did not indicate the required indicia of a disability. *Id.*

"Additionally, no acceptable medical source ha[d] mentioned findings equivalent in severity to

the criteria of any listed physical impairments, individually or in combination." *Id.*

With respect to the latter standard, the ALJ found that Ms. Rainey has "mild restrictions"

in her daily living; she lives alone, is able to perform chores "a best [she] can," is able to take

public transportation and prepare her own meals, and indicates no deficiency in grooming and

hygiene. *Id.* The ALJ found that she has "mild difficulties" in social functioning, but "attends

church, talks, and texts with friends," she is able to "get[ ] along with others," and advocates for

others in recovery for substance abuse. *Id.* The ALJ explained that Ms. Rainey has "moderate

difficulties" with "concentration, persistence or pace," but she had no episodes of

decompensation. *Id.* at 24–25.

In sum, the ALJ concluded, "[b]ecause the claimant's mental impairment does not cause

at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of

decompensation, each of extended duration," Ms. Kennedy's limitations did not support a

finding of a disability. *Id.*

Ms. Rainey has moved for an order reversing the decision of the Acting Commissioner

arguing that the ALJ erred in (1) failing to consider all medically determinable impairments and,

of those considered, finding a number of them to be non-severe; (2) assessing Ms. Rainey's

residual functional capacity absent substantial evidentiary support and without properly

developing the record; (3) assessing past relevant work in which Ms. Rainey did not engage

within the meaning of the Social Security Regulations; and (4) and failing to give controlling

weight to the Ms. Rainey's treating physicians' reports. Plaintiff's Memorandum of Law in Support of Mot. to Reverse, dated Nov. 23, 2016 ("Pl.'s Mem."), ECF No. 18-1, at 27–47 .

The Court addresses each of these arguments in turn.

## A.     Step Two

Ms. Rainey argues that the ALJ erred at the second step of the analysis in finding, absent substantial evidence, that Ms. Rainey's bilateral knee impairment, coronary arterial disease, Hepatitis C, human immunodeficiency virus ("HIV"), chronic obstructive pulmonary disease ("COPD"), and obesity were non-severe. Pl.'s Mem. at 27–38. The decision being silent on the Ms. Rainey's diagnosed posttraumatic stress disorder ("PTSD") and shoulder pain of which she has complained, Ms. Rainey further argues that the ALJ failed to consider the sum of Ms. Rainey's medically determinable impairments. *Id.* at 37. She maintains that, to the extent that the ALJ's findings were, at least in part, due to the absence of particular care or omission of records or notations, *id.* at 41–43, the ALJ had an affirmative duty to develop the record to address these evidentiary issues. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) ("[T]hat the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." (citing *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009))).

The Acting Commissioner, in response, argues that the ALJ duly considered the record evidence to determine that Ms. Rainey's bilateral knee impairments, coronary artery disease, hepatitis C, HIV, bronchitis or COPD, and obesity were non-severe. She further argues that any error made is harmless because the ALJ found severe impairments and continued in the sequential analysis. The Acting Commissioner argues that her decision should thus be affirmed. The Court agrees.

A claimant seeking Social Security benefits must bear the burden of showing that the claimant has a medically severe impairment or combination of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). "The severity regulation requires the claimant to show that [the claimant] has an 'impairment or combination of impairments which significantly limits' 'the abilities and aptitudes necessary to do most jobs.'" *Id.* at 146 (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(b)). It is the plaintiff's burden to provide "medical evidence which demonstrates the severity of her condition." *Merancy v. Astrue*, No. 10-cv-1982 (MRK)(WIG), 2012 WL 3727262, at *7 (D. Conn. May 3, 2012) (citing *Bowen*, 482 U.S. at 146).

At Step Two, if the ALJ finds any impairment to be severe, "the question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Jones–Reid v. Astrue*, 934 F. Supp. 2d 381, 402 (D. Conn. 2012), *aff'd*, 515 F. App'x 32 (2d Cir. 2013) (quoting *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801 (6th Cir. 2003)); *see also Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) ("Step Two may do no more than screen out *de minimis* claims.") (citation omitted).

Here, the ALJ found that Ms. Rainey's degenerative disc disease of the lumbar spine and depression to be severe, and then proceeded with the sequential analysis, evaluating Ms. Rainey's residual functional capacity ("RFC")—even if not for the reasons that Ms. Rainey now argues the ALJ should have proceeded—and as a result, any error in the ALJ's determination of the status of Ms. Rainey's bilateral knee impairment, coronary arterial disease, Hepatitis C, HIV/AIDS, COPD, obesity were non-severe is harmless. *See Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010) (finding harmless error where "the ALJ did identify severe impairments at step two, so that Stanton's claim proceeded through the sequential evaluation process. Further, contrary to Stanton's argument, the ALJ's decision makes clear that he

considered the 'combination of impairments' and the combined effect of 'all symptoms' in making his determination.") (citing 42 U.S.C. § 423(d)(2)(B) (requiring consideration of "combined effect of all of the individual's impairments"); *accord* 20 C.F.R. § 404.1523.

The ALJ's alleged failure to consider Ms. Rainey's PTSD does not change this outcome. Ms. Rainey has only identified diagnoses of PTSD. Tr. at 401, 453, 460, 467, 488, 517–18, 578–79. But "[t]he mere diagnosis of an impairment 'says nothing about the severity of the condition.'" *Burrows v. Barnhart*, 03-cv-342 (CFD)(TPS), 2007 WL 708627, at *6 (D. Conn. Feb. 20, 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988)).

Ms. Rainey's motion to reverse on this ground therefore is denied and the Acting Commissioner's motion to affirm on this ground is granted.

## B.      Step Four

Ms. Rainey next argues that the ALJ's residual functional capacity analysis is unsupported by medical opinion. The Acting Commissioner, on the other hand, argues that Ms. Rainey's assertion rests on the false premise that an RFC analysis is a medical determination that must rely on medical opinion. The Court agrees.

RFC is "what an individual can still do despite his or her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* RFC is "an assessment based upon all of the relevant evidence . . . [which evaluates a claimant's] ability to meet certain demands of jobs, such as physical demands, mental demands, sensory requirements, and other functions." 20 C.F.R. § 220.120(a). An ALJ must

consider both a claimant's severe impairments and non-severe impairments in determining the claimant's RFC. 20 C.F.R. § 416.945(a)(2); *De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 937 (2d Cir. 1984).

### 1.     State Agency Consultant Opinions

Ms. Rainey does not contest the ALJ's decision to discount the medical consultants' assessments; instead she argues that, in rejecting the medical consultants' assessments, the ALJ determined Ms. Rainey's medical condition without reference to any medical opinion whatsoever and therefore should have further developed the record. The Court disagrees.

"State agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." *Tyson v. Astrue*, No. 09-cv-1736 (CSH), 2010 WL 4365577, at *10 (D. Conn. June 15, 2010), *report and recommendation adopted*, 2010 WL 4340672 (D. Conn. Oct. 22, 2010). In this Circuit, "the opinions of non-examining sources can override the treating sources' opinions provided they are supported by evidence in the record." *Id.* (citing *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993)). The Second Circuit, however, has also recognized that "[t]here is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations." *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013); *see also Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (noting that an ALJ may not "arbitrarily substitute [the ALJ's] own judgment for competent medical opinion") (quoting *Balsamo*, 142 F.3d at 81).

Even though the ALJ considered and rejected the assessments of Nalini Tella, M.D., Tr. at 108–18, and Anita Bennett, *id.* at 120–32, the ALJ's ultimate functional capacity determination is consistent with Dr. Tella's and Dr. Bennett's analysis "in all relevant ways." *Pellam*, 508 F. App'x at 90. Both doctors found Ms. Rainey to have exertional limitations,

including that she could only occasionally lift or carry twenty-five pounds, frequently lift or carry only ten pounds, and both stand and walk for approximately six hours of an eight-hour workday, with normal breaks. Tr. at 115, 128. They also found Ms. Rainey had postural limitations, including that she could only occasionally climb stairs or ladders, balance, stoop, kneel, crouch, and crawl. *Id.* at 115–16, 128–29. Neither doctor found her to have any manipulative, visual, communicative, or environmental limitations. *Id.* at 116, 129.

The ALJ, for her part, concluded that Ms. Rainey had a spine dysfunction and, in addition to finding she could only perform light work, the ALJ incorporated two limitations into her description of Ms. Rainey's RFC—namely, that she "can never climb ladders, ropes, and scaffolds" and may "occasionally climb ramps and stairs, balance, stoop, kneel , crouch, and craw." *Id.* at 25.

Notwithstanding that the ALJ did not credit all of Doctor Tella's and Doctor Bennett's findings, their medical opinion "largely supported" the ALJ's analysis of Ms. Rainey's RFC. *Pellam*, 508 F. App'x at 90. "Under these circumstances—especially considering that the ALJ also had all of the treatment notes from [Ms. Rainey's] treating physicians—[the Court does] not think that the ALJ had any further obligation to supplement the record . . . ."[3] *Id.* (citing *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[W]here there are no obvious gaps in the

---

[3] "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). To show prejudice, Ms. Rainey must show how she was prejudiced by the ALJ's failure to obtain these additional treatment records. *Wessel v. Colvin*, No. 14-cv-184 (AVC), 2015 WL 12712297, at *11 (D. Conn. Dec. 30, 2015) (citing *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997)). "To demonstrate prejudice, the plaintiff must show that these records would undermine [ ] the ALJ's decision." *Lena v. Astrue*, No. 10-cv-893 (SRU), 2012 WL 171305, at *9 (D. Conn. Jan. 20, 2012) (citation and internal quotation marks omitted).

The ALJ took into the consideration the findings from Ms. Rainey's earlier claim and gave them "little weight." Tr. at 27. Having failed to show what germane and material records the ALJ failed to consider, she cannot show that she is prejudiced by the ALJ's failure to develop the record.

administrative record, and where the ALJ already possesses a "complete medical history," the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (citation omitted)); *see also* Tr. at 521–99, 626–709, 749–855.

Ms. Rainey next argues that the ALJ rejected the psychological consultants' assessments, and, in doing so, the ALJ has "substitute[ed] his [*sic*] own judgment for competent medical opinion." Pl's Mem. at 43. Again, the Court disagrees.

Ms. Rainey ignores that the ALJ took into account the psychological assessment dated November 28, 2012, which she accorded "significant weight" due to duration of the treating relationship. Tr. at 28, 517–20. The assessment indicates that Ms. Rainey demonstrates ability to exercise "good judgment" regarding safety and dangerous circumstances and uses appropriate coping skills to meet "ordinary demands of a work week." *Id.* at 518. It also demonstrated that she exhibited no issue interacting with others in the work environment, asking questions or requesting assistance, and respecting appropriately to others in authority. *Id.* at 519. The assessment did note, however, that Ms. Rainey demonstrated a "slight problem" carrying out multi-step instructions and changing from one simple task to another. *Id.* She also exhibited "an obvious problem" with focusing long enough to finish simple activities or tasks and performing work activity on a sustained basis. *Id.*

The ALJ noted that the weight she afforded the November 28, 2012 assessment was consistent with the treatment notes in evidence, including the state agency psychological consultants assessments, that indicate Ms. Rainey has no difficulty with hygiene and grooming, no difficulty relating to others, and no significant difficulties with attention and memory. *Id.* at 18, 749–855. The ALJ recognized that the notes do indicate that she complains of sleep difficulties, depressive thought content that suggest difficulty in task completion and that the

assessment is further supported by Ms. Rainey's level of activity and treating source Global Assessment of Functioning scores. *Id.* at 28.

As discussed above, although the ALJ considered and rejected the agency psychiatric assessments, the ALJ's ultimate functional capacity determination is consistent with these analyses "in all relevant ways." *Pellam*, 508 F. App'x at 90; *see also* Tr. at 112 ("negligible deficits are suggested w/ simple/complex tasks, changing tasks and work pace while focus/sustained activity are a mod. Problem. The latter difficulties may better reflect physical problems . . . ."), 125 (same), 136 (noting "memory intact" and "able to concentrate"), and 149 (noting "memo intact"). Consistent with these findings, the ALJ incorporated the following limitation into Ms. Rainey's RFC: "She is limited to understanding, remembering, and carrying out simple, routine, routine, and repetitive noncomplex tasks." Tr. at 25.

The ALJ discounted the agency psychological consultants' assessments, but their medical opinion "largely supported" the ALJ's analysis of Ms. Rainey's RFC with respect to her mental capacity. *Pellam*, 508 F. App'x at 90. The ALJ made note that these assessments "provide[ ] more support for the mental health provider opinion suggesting 'obvious' problems in task performance." Tr. at 27. "[C]onsidering that the ALJ also had all of the treatment notes from [Ms. Rainey's] treating physicians—[the Court does] not think that the ALJ had any further obligation to supplement the record . . . ." *Id.* (citing *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)).

### 2. Consideration of Non-Severe Impairments

Finally, Ms. Rainey argues that the ALJ determined Ms. Rainey's exertional limitations solely considering her degenerative disc disease. She also argues that the ALJ has failed to take

into account Ms. Rainey's non-severe impairments, when determining the postural and environmental restrictions. The Court disagrees.

"[O]nce a 'severe' impairment has been found, the ALJ must base [the] RFC on all the relevant medical evidence, including both 'severe' and 'non-severe' impairments." *Lofton v. Colvin*, No. 13-cv-528 (JBA), 2015 WL 2367692, at *21 (D. Conn. May 13, 2015) (quoting 20 C.F.R. §§ 404.1520(e)). The regulations provide that the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. § 416.920(e).

The ALJ states:

> The claimant is limited to light work with the stated postural and environmental limitations due to her back pain in combination with the symptoms of her nonsevere impairments. Although she has significant DDD, the notes indicate no significant gait problems, complaints of problems sitting, or loss of range of motion. Thus, she has the sitting, standing, and walking capacity to perform light work. The back pain as evidenced by the findings of tenderness and spasm, also justifies the postural and environmental limitations when considered in conjunction with the nonsevere impairments. The mental limitation is based upon the opinion of the claimant's mental health treating source.

Tr. at 28.

As noted above, the burden of showing harm, if any, is on Ms. Rainey. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). But instead of showing that the RFC's exertional, postural, or environmental limitation do not rest upon evidence having "rational probative force," Ms. Rainey instead has offered a litany of prescriptions, medical procedures, and prognoses that, in and of themselves, are insufficiently probative of Ms. Rainey's capacity to sit, stand, or walk, for example. *See Yancey v. Apfel*, 145 F.3d 106, 111 (2d

Cir. 1998) ("Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner.").

In the alternative, Ms. Rainey maintains that the ALJ's reasoning is faulty, given the untenable gaps in the record. An ALJ must develop the record, *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996), but "'where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim,'" *Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)). In this case, Ms. Rainey has offered no clear evidence that the medical documentation was insufficient or that a shortage of information was harmful. *See, e.g.*, *Rosa v. Callahan*, 168 F.3d 72, 79–80 (2d Cir. 1999) (finding the ALJ "failed to fill any clear gaps in the administrative record" when the record include "sparse" notes from nine medical visits when the claimant, who spoke no English and was represented only by a "legal assistant," testified that she had been treated for two years, and further testified that she was x-rayed on the day she was injured, but the ALJ failed to make any inquiries about these records). To the contrary, the ALJ demonstrated an attention to the details of the record. For example, she recognized that the agency medical consultants' assessments had no treating or examining relationship with the claimant and did not have access to significant portions of the records "suggest[ing] a greater degree of limitation than the medium exertional capacity [the consultants] assessed." Tr. at 27. Accordingly, the ALJ discounted the medical consultants' assessments.

In essence, Ms. Rainey takes issue with the ALJ's failure to itemize each piece of evidence and explain how each contributed to the final determination. The ALJ, however, "does

not have to state on the record every reason justifying a decision." *Brault*, 683 F.3d at 448. "'Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted.'" *Id.* (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). In addition, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.*

Nevertheless, after setting out Ms. Rainey's various alleged impairments attributable to her severe and nonsevere impairments as found by the ALJ—including pain in her knees and back, shortness of breath, melancholia, and social withdrawal— the ALJ stated that her medically determinable impairments could "reasonably be expected to cause the alleged symptoms," but also noted that her claims regarding the "intensity, persistence and limiting effects" were not "entirely credible." Tr. at 26. The ALJ found that Ms. Rainey was only partially credible on the basis of her testimony that she can vacuum her rug and do her laundry, cook while sitting in a chair, perform light chores, such as sweeping, mopping, and ironing, uses public transportation, travels by walking, and is able to do her own shopping. *Id.* at 26. The ALJ accordingly determined that the plaintiff was not completely unable to work. "Credibility determinations are entrusted to the ALJ because the ALJ has the opportunity to observe the demeanor of the witness." *Garcia v. Astrue*, No. 09-cv-319 (CFD) (TPS), 2010 WL 1072350, at *2 (D. Conn. Feb. 18, 2010) (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983)).

Finally, Ms. Rainey impliedly argues that the ALJ failed to consider her obesity in combination with her other impairments. *See* Pl.'s Mem. at 39 (arguing that the RFC is "defective" because the ALJ "failed to consider all of Rainey's medically determinable impairments"). Again, the Court disagrees.

At steps four and five of the sequential analysis, an ALJ must consider the claimant's obesity in conjunction with the claimant's RFP by "assessing the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Gallegos v. Colvin*, No. 13-cv-393 (JBA), 2014 WL 4635418, at *19 (D. Conn. Sept. 11, 2014) (citing *Crossman v. Astrue*, 783 F. Supp. 2d 300, 309–10 (D. Conn. 2010)).

Significantly, here, in determining that her obesity was non-severe, the ALJ noted that the record evidence does not reflect that Ms. Rainey's loss of weight would alleviate "any symptomology." Tr. at 23. Ms. Rainey has not pointed to any evidence that would unsettle this conclusion. *See Balsamo*, 142 F.3d at 80 ("[T]he burden is on the claimant to prove that [the claimant] is disabled within the meaning of the [Social Security] Act . . . ." quoting *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983)); *Talavera v. Astrue*, 500 F. App'x 9, 11 (2d Cir. 2012) (affirming the Commissioner where the claimant's treating and examining physicians concluded that her weight only imposed mild limitations on her functional abilities, and the ALJ expressly referred in her decision to the Vocational Expert's testimony that "claimant's weight would not interfere with [certain] low stress jobs"). The ALJ therefore could not have failed to consider Ms. Rainey's obesity when there is no evidence in the record probative that her weight would alleviate her symptoms or is related to her symptoms.

The ALJ properly considered Ms. Rainey's obesity in combination with her other impairments.

The Court concludes that the ALJ's determination that Ms. Rainey can perform light work is supported by substantial evidence of the record. Her motion to reverse on the ground therefore is denied and the Acting Commissioner's motion to affirm is granted.

**C.      Step Five**

Ms. Rainey argues that consideration of her relevant past employment is precluded by her

RFC, and the ALJ's finding that she is not disabled is thus not supported by substantial evidence.

The Acting Commissioner contends that at issue is whether it was rational for the ALJ to have

considered Ms. Rainey to have been a fast food worker in 2000, and asserts that the answer is

yes. The Court agrees.

The Social Security regulations define work experience as the "skills and abilities" the

claimant has acquired through work the claimant has done which "show the type of work [the

claimant] may be expected to do." 20 C.F.R. § 416.965(a). Under the regulations, past work

demonstrates "the kind of work that [the claimant] may be expected to do." *Id.* A claimant's

work experience "applies" when done "within the last 15 years, lasted long enough for [the

claimant] to learn to do it, and was substantial gainful activity." *Id.*

The ALJ considered Ms. Rainey's past relevant work as that of a fast food worker under

the Dictionary of Occupational Titles ("DOT"). Tr. at 29, 103. The DOT provides that a fast food

worker:

> Requests customer order and depresses keys of multicounting
> machine to simultaneously record order and compute bill. Selects
> requested food items from serving or storage areas and assembles
> items on serving tray or in takeout bag. Notifies kitchen personnel
> of shortages or special orders. Serves cold drinks, using drink-
> dispensing machine, or frozen milk drinks or desserts, using
> milkshake or frozen custard machine. Makes and serves hot
> beverages, using automatic water heater or coffeemaker. Presses
> lids onto beverages and places beverages on serving tray or in
> takeout container. Receives payment. May cook or apportion french
> fries or perform other minor duties to prepare food, serve
> customers, or maintain orderly eating or serving areas.

U.S. DEP'T OF LABOR, DOT § 311.472-010 (4th ed. 1991).

Indeed, Ms. Rainey earned $11,287.92 in 2000, Tr. at 286, which meets the substantial gainful activity requirement for any given month that year. *See* 20 C.F.R. § 416.974(b) (setting out the method for reviewing earnings to determine if the claimant has been performing substantial gainful activity); Social Sec. Agency, Program Operations Manual System ("POMS") § DI 10501.015 (noting that "[c]ountable earnings" of employees indicate SGA and "countable income" of the self-employed is "substantial" if the amount averages more per month than $700 in 2000).

Ms. Rainey testified that she worked full-time for eleven months in 1999[4] as a crew member and shift manager in training at McDonalds. Tr. at 84. Her duties required that she stand, walk, and serve customers; she received a thirty minute break, which allowed for her to sit. *Id.* The work occasionally required that she lift twenty-to-thirty pounds. *Id.* Lifting items of any significant weight with more frequency was difficult for Ms. Rainey, because, as she described it: "the weight goes through my arms down to my back and knees." *Id.* at 85.

This testimony was corroborated by evidence in the record, including Ms. Rainey's report that, from 1999 to 2002, she worked at McDonald's eight hours daily, five days weekly. *Id.* at 311, 317–18. She served customers, trained the "crew," worked the drive-thru window, and did sweeping and mopping. *Id.* at 318. Elsewhere in the record, Ms. Rainey reported that she supervised four workers, performed in-service training, opened and closed the store, provided customer service, in addition to food preparation, cleaning, using "machines, tools or equipment." *Id.* at 360. She further reported lifting fifty pounds between one-third and two-thirds

---

[4] The Court believes this to be an error. Ms. Rainey's earnings statement shows that she earned a total of $133.54 in 1999. Given that Ms. Rainey indicates that she worked for eleven months, the Court will assume that she began her employment in late 1999 and it carried over into 2000, which is consistent with balance of the record evidence. *See, e.g.*, Tr. at 286 (showing earnings of $11,287.92 for 2000).

of the workday. *Id.* at 318. Ms. Rainey testified that, although she was a "manager in training" while employed at McDonald's, was never, in fact, a manager.[5]

By contrast, the DOT definition of a food service manager requires—in addition to training personnel and preparing food—directing and coordinating the preparation of food, ordering supplies, and hiring personnel, for example. DOT § 185.137-010. The SSA regulation asks that this Court focus on Ms. Rainey's "skills and abilities" acquired through work she has done. 20 C.F.R. § 416.965(a). Ms. Rainey has offered no authority, binding or otherwise, and this Court is not aware of any, that titular considerations should drive the Dictionary of Occupational Title under which a claimant's past relevant work is evaluated.

The ALJ's determination of Ms. Rainey's occupation therefore is supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion." *Lucas v. Colvin*, No. 14-cv-775 (AVC), 2016 WL 9000439, at *5 (D. Conn. Mar. 31, 2016), *aff'd sub nom. Lucas v. Berryhill*, 689 F. App'x 4 (2d Cir. 2017) (quoting *Williams v. Bowen*, 859

_____

[5] A fast food "manager" for purposes of the DOT:

> Directs, coordinates, and participates in preparation of, and cooking, wrapping or packing types of food served or prepared by establishment, collecting of monies from in-house or take-out customers, or assembling food orders for wholesale customers. Coordinates activities of workers engaged in keeping business records, collecting and paying accounts, ordering or purchasing supplies, and delivery of foodstuffs to wholesale or retail customers. Interviews, hires, and trains personnel. May contact prospective wholesale customers, such as mobile food vendors, vending machine operators, bar and tavern owners, and institutional personnel, to promote sale of prepared foods, such as doughnuts, sandwiches, and specialty food items. May establish delivery routes and schedules for supplying wholesale customers. Workers may be known according to type or name of franchised establishment or type of prepared foodstuff retailed or wholesaled.

DOT § 185.137-010.

F.2d 255, 258 (2d Cir. 1988)).

Finally, Ms. Rainey argues that, in reaching the conclusion that Ms. Rainey is able to perform her past relevant work as actually and generally performed, the ALJ failed to properly consider Ms. Rainey's treating physicians' conclusions. The Court disagrees.

"[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Mariani v. Colvin*, 567 F. App'x. 8, 10 (2d Cir. 2014) (holding that "[a] treating physician's opinion need not be given controlling weight where it is not well-supported or is not consistent with the opinions of other medical experts" where those other opinions amount to "substantial evidence to undermine the opinion of the treating physician").

"The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion." *Schrack v. Astrue*, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing *Schupp v. Barnhart*, No. 02 CV 103, 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)). The ALJ must "explain why a treating physician's opinions are not being credited." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). It is "within the province of the ALJ to credit portions of a treating physician' s report while declining to accept other portions of the same report, where the record contain[s] conflicting opinions on the same medical condition." *Pavia v. Colvin*, No. 14 CV 6379, 2015 WL 4644537, at 4 (W.D.N.Y. Aug. 4, 2015) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). In determining the

amount of weight to give to a medical opinion, the ALJ must consider the examining

relationship, the treatment relationship, the length of treatment, the nature and extent of

treatment, evidence in support of the medical opinion, consistency with the record, specialty in

the medical field, and any other relevant factors. 20 C.F.R. § 404.1527.

The ALJ discounted the medical opinions of Ms. Rainey's primary care providers,

Sharjeel Ahmed, M.D., and Mauricial Montezuma, M.D., who both suggested a "less-than-

sedentary functional capacity." Tr. at 27–28. With respect to Dr. Ahmed, the ALJ acknowledged

a significant treating relationship, but discounted Dr. Ahmed's opinion because the weight of the

evidence could not support his conclusion given that Ms. Rainey had not pursued "specialist

care, injections, or even physical therapy, along with the absence of any gait, motor, sensation, or

range of motion deficits." *Id.* at 28. As discussed above, Dr. Ahmed's conclusion is substantially

undermined by Ms. Rainey's ability to vacuum and do her own laundry, cook while sitting,

perform household chores, ride public transportation, attend church, and shop. *Id.* Accordingly,

the ALJ found that the "longitudinal record does not indicate a level of pain and limitation

consistent with the allegations." *Id.* at 26. The ALJ's decision not to give Dr. Ahmed's opinion

controlling weight therefore is supported by substantial evidence.[6] *See Monroe v. Comm'r of*

---

[6] By contrast, the ALJ gave "great weight" to Dr. Ahmed's HIV questionnaire. Tr. at 28. In
doing so, the ALJ gave due deference to Dr. Ahmed as Ms. Rainey's treating physician because
it was consistent with the lack of current symptomology in Ms. Rainey's other treatment notes,
indicating that her condition was "stable." *Id.*; *see also Burgess*, 537 F.3d at 128 (requiring the
ALJ to accord the treating physician's opinion "controlling weight" so long as it "is well-
supported by medically acceptable clinical and laboratory diagnostic techniques and is not
inconsistent with the other substantial evidence in [the] case record"); *Ardito v. Barnhart*, No.
04-cv-1633 (MRK), 2006 WL 1662890, at *5 (D. Conn. May 25, 2006) (finding that the ALJ
violated that treating physician rule because the ALJ "cherry-picked out of the record those
aspects of the physicians' reports that favored his preferred conclusion and ignored all
unfavorable aspects, without ever explaining his choices, let alone basing them on evidence in
the record"); *Velazquez v. Barnhart*, No. 02-cv-1264 (MRK), 2004 WL 367614, at *10 (D.

(Continued . . . )

*Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) (finding that the ALJ properly discounted a treating physicians opinion where "substantial evidence" contradicted the assessment).

The ALJ also declined to consider Dr. Montezuma's opinion. *Id.* The ALJ did so, in part, because Dr. Montezuma's opinion, like Dr. Ahmed's, is contradicted by the weight of the evidence. *Id.* For the same reason the ALJ's decision not to give Dr. Ahmed's opinion controlling weight is supported by evidence "a reasonable mind might accept as adequate" to show that Dr. Montezuma's opinion was deserving of little deference. *See Lucas*, 2016 WL 9000439, at *5 (requiring the ALJ's finding be supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion").

The ALJ's decision not to give Dr. Ahmed's and Dr. Montezuma's report and conclusions controlling weight is supported by substantial evidence. The motion to reverse on this ground therefore is denied and the Acting Commissioner's motion to affirm is granted.

## IV.    CONCLUSION

For the reasons discussed above, the motion to reverse the decision of the Acting Commissioner is **DENIED** and the motion to affirm the decision of the Acting Commissioner is **GRANTED**. The Clerk of the Court is respectfully directed to amend the case caption to reflect that Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, is now the named Defendant in this action, and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 17th day of October, 2018.

　　　　　　　　　　　　　　/s/ Victor A. Bolden
　　　　　　　　　　　　　　VICTOR A. BOLDEN
　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

Conn. Feb. 19, 2004) (finding error where there was "no indication" that the ALJ weighed the various factors required by 20 C.F.R. § 404.1527(d)(2)).